FILED

STEPHEN F. ROHDE
ROHDE & VICTOROFF
1880 Century Park East, Suite 411
Los Angeles, CA 90067
phone 310/277-1482 fax 310/277-1485
email: steve@rohde-victoroff.com SBN 51446

MARGARET KATHRYN MAAS, A
PROFESSIONAL LAW CORPORATION
110 Avenida Serra
San Clemente, CA 92672
phone 949/361-0386 fax 949/361-8679
email: mmaas@sbcglobal.net SBN 91131

Attorneys for Plaintiffs

2008 MAY 19 AM 10:58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARK T. HENZE and MARGARET K. MAAS,

     Plaintiffs,

vs.

RICK GILLILAND, MARNI SCHEAR, JILL MORAN, COASTAL ANIMAL SERVICES AUTHORITY, CITY OF SAN CLEMENTE, CITY OF DANA POINT, OFFICE OF ADMINISTRATIVE HEARINGS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

**CV08-03296 ABC(ANx)**

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, FOR DAMAGES AND FOR INJUNCTIVE AND DECLARATORY RELIEF (42 U.S.C. §§ 1983, 1985, 1988)**

Plaintiffs allege:

## INTRODUCTORY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 to redress violations of Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

2. Plaintiffs also challenge the jurisdiction of Defendant COASTAL ANIMAL SERVICES AUTHORITY, including, without limitation, its General Manager Defendant RICK GILLILAND, to enforce the provisions of Chapter 6.28 of the San Clemente Municipal Code which provisions are to be enforced *solely* by the Animal Services Program Manager for Defendant CITY OF SAN

Civil Rights Complaint

CLEMENTE.

3.     Plaintiffs also challenge the constitutionality of Section 6.28.020D of Chapter 6.28 of the San Clemente Municipal Code, which provides for a hearing to "contest" a determination of "viciousness" before the same Animal Services Program Manager who made the original determination of "viciousness" and further purports to make the decision of the Animal Services Program Manager "final."

4.     Plaintiffs also challenge the jurisdiction of the Office of Administrative Hearings to conduct the hearing provided for under Section 6.28.020D of the San Clemente Municipal Code.

5.     Plaintiffs seek injunctive relief enjoining Defendants and each of them from enforcing or attempting to enforce the provisions of Chapter 6.28 of the San Clemente Municipal Code, in violation of plaintiffs' right to due process guaranteed under the Fourteenth Amendment to the United States Constitution.

6.     Plaintiffs seek further injunctive relief enjoining Defendants and each of them from advising the residents of San Clemente that they are required to submit to an inspection of their homes and to pay an inspection fee before an application for a private kennel permit can be granted, in violation of the provisions of the San Clemente Municipal Code and the residents' right against unreasonable searches and seizures guaranteed under the Fourth Amendment to the United States Constitution.

7.     In addition, Plaintiffs seeks a declaratory judgment that Defendants' actions and Section 6.28.020D of the San Clemente Municipal Code are unconstitutional under the First, Fourth and Fourteenth Amendment to the United States Constitution and that the Office of Administrative Hearings has no authority or jurisdiction to conduct a hearing under Section 6.28.020D of the San Clemente Municipal Code, as well as damages, costs and attorneys' fees.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

9.     Venue is proper in the Central District of California, pursuant to 28 U.S.C. §1391(b), because the events and occurrences giving rise to this claim arose in this District.

Civil Rights Complaint

**JURY DEMAND**

10.    Plaintiffs demand trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues triable by jury.

**PARTIES**

11.    Plaintiffs MARK T. HENZE ("HENZE") and MARGARET K. MAAS ("MAAS") are, and at all times herein mentioned were, husband and wife, citizens of the United States and residents of the City of San Clemente, County of Orange, State of California.

12.    Plaintiffs are informed and believe, and on such information and belief allege, that Defendant COASTAL ANIMAL SERVICES AUTHORITY ("CASA") is a joint powers agency which provides, and at all times herein mentioned, has provided animal control and shelter services to Defendants CITY OF SAN CLEMENTE and CITY OF DANA POINT and the residents thereof.

13.    Plaintiffs are informed and believe, and on such information and belief allege, that Defendant CITY OF SAN CLEMENTE ("SAN CLEMENTE") is, and at all times herein mentioned was, a municipal corporation organized and existing under the laws of the State of California, and situated in the County of Orange.

14.    Plaintiffs are informed and believe, and on such information and belief allege, that Defendant CITY OF DANA POINT ("DANA POINT") is, and at all times herein mentioned was, a municipal corporation organized and existing under the laws of the State of California, and situated in the County of Orange.

15.    Plaintiffs are informed and believe, and on such information and belief allege, that Defendant RICK GILLILAND ("GILLILAND") is, and at all times herein mentioned was, a resident of the County of Orange and the General Manager and/or the Director for Defendant CASA, and at all times herein mentioned was acting in his official capacity as the General Manager and/or the Director for Defendant CASA.

16.    Plaintiffs are informed and believe, and on such information and belief allege, that Defendant MARNI SCHEAR, also identified as Badge No. 2 ("SCHEAR") is, and at all times herein mentioned was, a resident of the County of Orange, and at all times herein mentioned was acting in her official capacity as an animal control officer of Defendant CASA.

Civil Rights Complaint

17.   Plaintiffs are informed and believe, and on such information and belief allege, that Defendant JILL MORAN, also identified as Badge No. 2 ("MORAN") is, and at all times herein mentioned was, a resident of the County of Orange, and at all times herein mentioned was acting in her official capacity as an animal control officer of Defendant CASA.

18.   Plaintiffs are informed and believe, and on such information and belief allege, that Defendant OFFICE OF ADMINISTRATIVE HEARINGS ("OAH") is a hearing tribunal established by the California Legislature to implement the Administrative Procedure Act, California Government Code Sections 11500, *et seq.*

19.   It is unknown to Plaintiffs at this time as to which of the Defendants was acting in his, her or its capacity as the agent, servant, employee, associate, joint venturer, co-participant, co-conspirator and/or principal of or with any of the other Defendants, and which of the Defendants were acting in their individual capacity and their own individual behalf and without the knowledge, consent, permission, authority and/or ratification of the other Defendants.

## GENERAL ALLEGATIONS

20.   Plaintiffs' animals are an integral and important part of their lives.  Plaintiff MAAS had two dogs and a cat when she met Plaintiff HENZE in law school over 30 years ago and they have had dogs and cats continuously throughout their relationship.  Plaintiffs were unable to have children and the animals are their family.  Plaintiffs' dogs were in their wedding and most of their activities center around their animals.  Plaintiffs hike, camp and vacation with their dogs and rarely go anywhere without them.  Plaintiffs built a cat enclosure so the cats can enjoy the outside but be protected from cars and coyotes.  The dogs and cats are "pals" and hang together as a unit.  Plaintiff MAAS' law office is an old house in downtown San Clemente and she typically takes her dogs with her to work.

21.   Plaintiffs' dog Chance holds a very special place in their lives.  He was part of a litter of nine (9) puppies born Christmas 2005 to a dalmatian Plaintiff MAAS rescued from the Orange County shelter.  The mother died from complications and Plaintiffs cared for the puppies from day one.  Chance ingested milk in one of his lungs, his lung became infected and he became very ill.  He was kept separate from the other puppies and spent his time with Plaintiffs.  He was named "Chance" after the vet gave him a 5% chance of surviving the night when he was a few weeks old.  Plaintiffs

Civil Rights Complaint

1   spent many nights in the Urgent Care Clinic in Mission Viejo, and then rushing him off to a specialty

2   hospital. He could not be adopted with the other puppies and had his lung removed when he was less

3   than three (3) months old. Chance still has health issues and respiratory problems, but is a very

4   happy, good natured boy, with a real zest for life. He loves people and has many people and dog

5   friends. A true and correct copy of one-page of photographs depicting Chance is attached hereto as

6   Exhibit A and incorporated herein by reference.

7        22.   Because the animals are such an important part of Plaintiffs' lives, the constant threats

8   by Defendant CASA and its officers to "impound" them and forcibly remove them from Plaintiffs'

9   home are extremely upsetting. Given Chance's health issues, he is particularly at risk of infection

10   especially from kennel cough and other respiratory viruses that are common in shelters. Because

11   Plaintiffs were so fearful of what CASA and the officers might do, after the incident between

12   Defendant MORAN and Plaintiff HENZE on February 10, 2008 where Defendant MORAN was so

13   abusive and threatening and showed such disdain for Plaintiffs' rights, Plaintiff MAAS went to live

14   at her office for a week with the dogs. Since then, Plaintiffs keep all of their gates locked at all times

15   and have posted three (3) no-trespassing signs on their property. Plaintiff MAAS wakes up in the

16   middle of the night, worrying when Defendants are going to show up and break down their door and

17   remove their animals because Plaintiffs have never agreed to the "conditions" concerning the "vicious

18   dog" declaration. Defendants have made Plaintiffs feel like criminals in their own neighborhood,

19   where they have lived for almost 25 years.

20        23.   Plaintiffs own and operate Second Chance Canine Rescue LLC ("Second Chance")

21   located in Newport Beach, California. Second Chance is a kennel licensed with the County of Orange

22   which provides boarding and facilitates adoptions for dogs owned by various non-profit dog-rescue

23   groups.

24        24.   In May of 2007 a complaint was made that a person had been bitten by an unneutered

25   male dalmatian-mix while trying to break up a dog fight at the Costa Mesa dog park. An

26   investigation ensued by the Orange County Animal Care Services to determine whether the

27   unneutered male dalmatian-mix was being housed at the Second Chance kennel, and on May 23,

28   2007, it was determined by the investigative agency that "the biting dog does not belong to the rescue

Civil Rights Complaint

5

1 group."

2     25.     On or about May 22, 2007, Defendant SCHEAR, purporting to act on behalf of

3 Defendant CASA, came to Plaintiffs' private residence in San Clemente and either trespassed on

4 Plaintiffs' private property and entered Plaintiffs' back yard, which is fenced and gated, or trespassed

5 on Plaintiffs' private property and on the private property of Plaintiffs' neighbor, which is also fenced

6 and gated, and searched Plaintiffs' private property, without Plaintiffs' permission.

7     26.     Thereafter, on May 22, 2007, Defendant SCHEAR, purporting to act on behalf of

8 Defendant CASA, posted on Plaintiffs' front door a Notice of Violation, a true and correct copy of

9 which is attached hereto as Exhibit B and incorporated herein by reference. The May 22, 2007 Notice

10 of Violation claimed Plaintiff MAAS had committed the following "VIOLATIONS":

11          "Vaccination Required

12          Dog License Required

13          Excessive Number of Animals

14          Special Permit(s) Required

15          24-Hour Notice to Contact This Office"

16     27. Under the "Breed" section of the Notice of Violation was written "DOGS/CATS/BIRDS".

17 The Notice further advised "You must have a Permit for # of animals at this address" and that "You

18 must license dog(s) by 6/2/07 to avoid court date/fine." The Notice concluded:

19          "FAILURE TO COMPLY WITH ABOVE, WILL RESULT IN

20          CITATION, FINES AND **IMPOUND** OF YOUR ANIMALS."

21     28.     At the time Defendant SCHEAR posted the Notice of Violation on Plaintiffs' property,

22 Defendant CASA had notice through its licensing records that Plaintiffs were the owners of three

23 dalmatian dogs, two spayed females and one neutered male, all of whom were properly vaccinated

24 and licensed with Defendant CASA.

25     29.     On May 23, 2007 Plaintiff HENZE contacted Defendant SCHEAR regarding the Notice

26 of Violation. Defendant SCHEAR admitted during the conversation that Plaintiffs' three dalmatian

27 dogs were current on all of their vaccinations and properly licensed with Defendant CASA. Plaintiff

28 HENZE asked what led Defendant SCHEAR to believe they owned CATS, as stated on the Notice

Civil Rights Complaint

of Violation. Defendant SCHEAR said she saw the dog run/cat enclosure with the dog door leading into the garage by "peering" over Plaintiffs' fence which is located on Plaintiffs' private property.

30. In her discussions with Plaintiff HENZE, Defendant SCHEAR insisted it was Plaintiffs' male dalmatian, Chance, who was involved in the alleged incident at the Costa Mesa dog park despite the fact the dog alleged to have been involved in the incident in Costa Mesa was an *unneutered* male dalmatian-mix and Plaintiffs' dog Chance is *neutered* and is not a dalmatian mix.

31. On or about May 24, 2007, Plaintiff MAAS had a conversation with Defendant SCHEAR, in which Defendant SCHEAR accused Plaintiffs of being the owners of the unneutered male dalmatian-mix dog allegedly involved in the incident in Costa Mesa. Plaintiff MAAS informed Defendant SCHEAR they did not own any unneutered male dalmatian-mix dog and that their male dalmatian had been neutered in September 2006. Plaintiff MAAS further advised Defendant SCHEAR that it was her understanding the Orange County Animal Care Services had investigated the matter and had determined the unneutered male dalmatian mix dog allegedly involved in the incident in Costa Mesa was unconnected to Plaintiffs or to any of the dogs being housed at the Second Chance kennel.

32. Defendant SCHEAR admitted during the May 24, 2007 conversation with Plaintiff MAAS that she "peered" over Plaintiffs' fence located on Plaintiffs' private property and saw the dog run/cat enclosure and the dog door leading into the garage. Defendant SCHEAR informed Plaintiff MAAS that despite the reference on the Notice of Violation to there being some problem with "BIRDS", there was no problem with "BIRDS". Defendant SCHEAR told Plaintiff MAAS that if Plaintiffs owned more than four dogs and cats, they would need a private kennel permit. Plaintiff MAAS advised Defendant SCHEAR they owned two indoor cats, both of whom were spayed/neutered and vaccinated, in addition to the three dogs licensed with Defendant CASA.

33. On or about May 29, 2007, Plaintiff MAAS obtained a copy of the application for a private kennel permit from Defendant CASA. The Application specifically provided the following:

> "I do understand and approve that my property will be inspected
> and may be periodically inspected by and (sic) Animal Services Officer
> and an inspection/permit fee will be paid to C.A.S.A."

Civil Rights Complaint

34.   On May 30, 2007 Plaintiff MAAS submitted the completed application for a private kennel permit with Defendant CASA, along with the required permit fee, after removing the language regarding Plaintiff's agreement to having her home inspected.  A true and correct copy of the completed application is attached hereto as Exhibit C and incorporated herein by reference.  Plaintiff MAAS was informed by the shelter personnel at Defendant CASA that she would be contacted to arrange a time to have her home inspected.  Plaintiff MAAS advised the shelter personnel there was no requirement in the San Clemente Municipal Code that required that applicants for a private kennel permit to submit to an inspection of their home, that Plaintiff would not agree to submit to an inspection of her home and that such an inspection would violative of Plaintiffs' constitutional rights.

35.   On June 5, 2007, Defendant SCHEAR contacted Plaintiff MAAS and left a message that the application for the private kennel permit looked good and would be approved, and all that was left to be done was to schedule an inspection of Plaintiff's home.  Plaintiff MAAS returned Defendant SCHEAR's call and left her a message that she would not permit an inspection of her home, that such an inspection was neither authorized nor mandated by the San Clemente Municipal Code dealing with private kennel permits, and would  violate her constitutional rights.  Plaintiff MAAS advised Defendant SCHEAR that she might want to discuss the matter with the attorneys for Defendant CASA but to call back if she had any questions.

36.   On June 5, 2007, Defendant SCHEAR left a second message for Plaintiff MAAS at her home threatening Plaintiff that if she did not submit to an inspection of her home, she would be in violation of the San Clemente Municipal Code and would be subject to daily citations and fines.  Plaintiff MAAS returned Defendant SCHEAR's call and left her a message reiterating that a home inspection was neither authorized nor mandated by the San Clemente Municipal Code, and that if she persisted with her threats, Plaintiff would initiate suit.

36.   On June 6, 2007, Plaintiff MAAS had a telephone conversation with Defendant GILLILAND who identified himself as the Director of Defendant CASA.  During that conversation Defendant GILLILAND admitted there was no requirement an applicant for a private kennel permit submit to a home inspection, and suggested Defendant SCHEAR had made a "mistake".  Plaintiff MAAS told  Defendant GILLILAND that the application for the private kennel permit itself also

Civil Rights Complaint

1   provided for a home inspection and the payment of an inspection fee and that she was told she would

2   have to submit to a home inspection by other shelter personnel. Plaintiff also informed Defendant

3   GILLILAND that Defendant SCHEAR was accusatory, abusive and threatening in her conversations

4   with Plaintiffs and that given Defendant SCHEAR's statement she had seen the dog run/cat enclosure

5   in Plaintiffs' yard and the dog door leading into the garage, Defendant SCHEAR had trespassed on

6   Plaintiffs' private property because it is impossible to see the dog run/cat enclosure and the dog door

7   leading into the garage without trespassing on Plaintiffs' private property. Defendant GILLILAND

8   laughingly called the entire situation a "minor" matter, nothing to be upset about, but said he would

9   talk to Defendant SCHEAR about her trespass. Defendant GILLILAND informed Plaintiff MAAS

10  there were no complaints against her animals and that there was no reason not to grant her application

11  for a private kennel permit given her "large" lot. Defendant GILLILAND advised he would be

12  approving Plaintiff's application for a private kennel permit later that day.

13          37.   On June 7, 2007 Plaintiff MAAS hand-delivered to Defendant GILLILAND as Director

14  of Defendant CASA a letter confirming their June 6, 2007 conversation, putting Defendant CASA

15  on formal written notice of the constitutional violations being perpetrated upon the residents of SAN

16  CLEMENTE vis-a-vis Defendant CASA's unlawful practice of requiring that applicants for private

17  kennel permits to submit to an inspection of their homes, and demanding that Defendant CASA

18  immediately remove the language in the application requiring a home inspection and otherwise cease

19  and desist its illegal and unconstitutional activities.  Plaintiffs' letter further indicated that she

20  expected there would be no further harassing telephone calls from Defendant SCHEAR or other

21  shelter personnel and that she expected there would be no retaliation against her, her family or her

22  animals for her legitimate refusal to give up her constitutional rights in order to obtain a private

23  kennel permit for her three dogs and two cats.  Plaintiffs' letter further described the considerable

24  emotional distress Plaintiffs MAAS and HENZE had sustained as a result of Defendant SCHEAR's

25  threats to impound their animals, her trespass and search of their private property and her threats to

26  subject Plaintiff MAAS to citations and fines for her refusal to submit to an unlawful and

27  unconstitutional inspection of their home.  Copies of the June 7, 2007 letter with the application for

28  private kennel permit (with the unlawful inspection demand highlighted) were served by mail on

Civil Rights Complaint

1   Jeffrey Oderman, City Attorney for SAN CLEMENTE, and on Jeffrey A. Goldfarb, Assistant City

2   Attorney for SAN CLEMENTE.  A true and correct copy of the June 7, 2007 letter is attached hereto

3   as Exhibit D and incorporated herein by reference.

4       38.   On February 9, 2008 at 1:30 p.m., Patrick Robbins, an animal control officer with

5   CASA and purporting to act on behalf of Defendant CASA, posted on Plaintiffs' property a Notice

6   of Violation, a true and correct copy of which is attached hereto as Exhibit E and incorporated herein

7   by reference.  The February 9, 2008 Notice of Violation asserted Plaintiff MAAS had committed the

8   following "VIOLATIONS":

9                "24-Hour Notice to Contact this Office

10               Quarantine of Your Animal - Please Call ASAP"

11   The Notice identified the "Location of Violation" as "Chance" but no other particulars were provided.

12   The "Other" Section of the Notice of Violation referenced 6.24.070 - Duty to Report Bite and

13   6.24.080 - Quarantine of Animals but did not specify the date, time or location of the alleged

14   "violation" or provide any specifics.  The Notice of Violation further stated that:

15               "FAILURE TO CALL W/IN 24 HRS WILL

16               RESULT IN **IMPOUNDMENT**"

17       39.   On February 10, 2008, Plaintiff HENZE contacted Defendant CASA by telephone,

18   advised that he was acting as counsel for Plaintiff MAAS with reference to the February 9, 2008

19   Notice of Violation, and that he would be faxing over a letter responding to the Notice of Violation.

20   At 12:33 p.m. Plaintiff HENZE faxed to Defendant CASA a letter which, *inter alia,* advised that

21   Plaintiff MAAS was unaware of any bite incident and that she could not respond to the Notice of

22   Violation given its lack of specificity or particulars regarding the alleged incident.  The February 10,

23   2008 correspondence further made a Public Records Act Request for all documents relating to the

24   alleged incident including all reports and medical records.  A true and correct copy of the February

25   10, 2008 correspondence is attached hereto as Exhibit F and incorporated herein by reference.

26       40.   Despite Plaintiff HENZE's advice by telephone and in writing that he was acting as

27   counsel for Plaintiff MAAS and his request that Defendant CASA correspond directly with him, after

28   receiving Plaintiff's letter, Defendant MORAN left a message at Plaintiff's office, calling the same

Civil Rights Complaint

1    number Plaintiff HENZE used to place his call to Defendant CASA and asked that Plaintiff MAAS

2    contact her directly to discuss the matter.

3        41.    Thereafter, at 1:20 p.m. on February 10, 2008, Defendant MORAN, purporting to act

4    on behalf of Defendant CASA, posted on Plaintiffs' property another Notice of Violation, a true and

5    correct copy of which is attached hereto as Exhibit G and incorporated herein by reference.  The

6    February 10, 2008 Notice of Violation listed the following "VIOLATIONS":

7            "Leash Law Violation

8            24-Hour Notice to Contact this Office

9            Quarantine of Your Animal - Please Call ASAP"

10   The Notice referred to an alleged incident on February 7, 2008.  Despite the reference to contacting

11   Defendant CASA within 24-hours, the Notice of Violation stated that "failure to comply with this

12   request by 2-10-08 @ 5 pm may result in the issuance of a citation to appear in court".  The Notice

13   referenced a need for Plaintiff MAAS' cooperation in this "SIMPLE MATTER."

14       42.    Thereafter, at approximately 2:30 p.m. on February 10, 2008, when Plaintiff HENZE

15   was standing in the driveway of Plaintiffs' home reading the most recent Notice of Violation,

16   Defendant MORAN pulled up at  high speed in her truck (in violation of the speed limit), after

17   waiting down the street for Plaintiffs to return home, swerved across the street and parked illegally

18   on the wrong side of the street and in front of Plaintiffs' driveway, blocking the driveway, while

19   yelling out the window "you are just the person I wanted to *catch*". Defendant MORAN then jumped

20   out of the vehicle and approached Plaintiff HENZE, leaving her vehicle halfway in the street,

21   blocking traffic, with the driver's door open and the engine running.

22       43.    Upon reaching Plaintiff HENZE, Defendant MORAN claimed  there had been a dog

23   bite incident on February 7, 2008 involving Chance and that Plaintiff MAAS had to sign a quarantine

24   agreement.  Plaintiff HENZE explained  that Plaintiff MAAS was not home but that Plaintiffs were

25   not aware of any bite and did not believe any bite had occurred.  Plaintiff HENZE asked Defendant

26   MORAN if she had a doctor's report or other report indicating the alleged injuries were from a dog

27   bite instead of something else.  Defendant MORAN said no.  Plaintiff HENZE asked who the

28   complainant was and to see a copy of the report.  Defendant MORAN refused to tell Plaintiff HENZE

Civil Rights Complaint

1  who the complainant was, waved the report in front of Plaintiff HENZE but would not allow him to

2  read it.  Defendant MORAN said Plaintiffs would be provided with a copy of the report but did not

3  provide Plaintiff HENZE with a copy of the report.

4      44.   During the discussion regarding the alleged "bite," Defendant MORAN did not question

5  Plaintiff HENZE as to why he did not believe there was a bite or ask Plaintiff HENZE any questions

6  regarding the alleged bite incident, demanding instead that he simply concede  there was a bite and

7  consent to the quarantine Defendant MORAN was demanding.  Plaintiff HENZE questioned the

8  discrepancies between the February 9, 2008 Notice of Violation and the February 10, 2008 Notice of

9  Violation and Defendant MORAN said the discrepancies were the result of "oversight" of the other

10  officer. Defendant MORAN admitted there was no real concern about rabies since Chance had a

11  current rabies vaccination but said Plaintiffs had no choice but to comply with the quarantine demand.

12  Defendant MORAN threatened that if Plaintiffs did not agree to the quarantine order and consent  to

13  an inspection of Plaintiffs' home, Defendants would make it *"very hard on her"*, would make it *"look*

14  *very bad for her"* and would *"charge her with all sorts of violations"* amounting to *"thousands of*

15  *dollars in fines."*   Plaintiff HENZE told Defendant MORAN he thought it looked very bad for an

16  officer of the law to threaten such things because someone is exercising their constitutional rights to

17  due process, against unreasonable searches and seizure and to confront witnesses, and reiterated again

18  that Plaintiff MAAS did not believe there was any "bite"  and was unwilling to agree there was a

19  "bite" without  proof a bite had actually occurred. Defendant MORAN insisted Plaintiffs had no

20  choice but to agree to quarantine Chance and Plaintiffs either had to agree to the quarantine or Chance

21  would be forcibly removed from Plaintiffs' home. Plaintiff HENZE told Defendant MORAN the San

22  Clemente Municipal Code provided for discretion regarding a quarantine and that Defendant

23  MORAN was misrepresenting the law in an attempt to intimidate and harm Plaintiffs.   Defendant

24  MORAN said that if Plaintiffs did not do what she said, a citation would be issued requiring Plaintiff

25  MAAS to go to court. Plaintiff HENZE advised that Plaintiff MAAS did not believe there was a bite,

26  would not agree there was a bite without seeing some "proof" a bite had occurred, and would prefer

27  to handle the matter in a court proceeding.  Defendant MORAN said Plaintiffs would receive a copy

28  of the bite report with the citation and left.

Civil Rights Complaint

45. Section 6.24.080 of the San Clemente Municipal Code entitled Quarantine of animals, a true and correct copy of which is attached hereto as Exhibit H and incorporated herein by reference, provides, in pertinent part, as follows:

> "Upon receipt of a report that a person has been bitten by an animal of a species known to rabies (...), the Animal Services Program Manager, *at his or her discretion*, shall have such animal isolated in strict confinement ...." (Emphasis Added)

46. On February 11, 2008, Plaintiff HENZE hand-delivered a letter to Defendant CASA stating that Defendant MORAN had confronted him at his home, had sped up to his home, blocked his driveway with her vehicle, illegally parked on the wrong side of the street and had accosted him in his driveway employing what he considered threatening and extortive tactics in an effort to deprive Plaintiffs of their constitutional and legal rights. The correspondence included a draft complaint against Defendants for their wrongful conduct in violation of Plaintiffs' constitutional rights and requested that Defendant CASA or its counsel contact Plaintiff HENZE to discuss a possible resolution of the matter. A true and correct copy of the February 11, 2008 correspondence, without the attached draft complaint, is attached hereto as Exhibit I and incorporated herein by reference. No one contacted Plaintiff HENZE to discuss the matter.

47. On February 11, 2008 Elyse Crane ("Crane") , the complainant in the February 7, 2008 incident was interviewed by Defendant MORAN. As reflected in the Activity Card for February 11, 2008, maintained by Defendant CASA, Crane told Defendant MORAN that she "did not feel [Chance] was in an attack mode, rather a *play* mode" when he jumped up on her while being walked by on a leash on February 7, 2008. A true and correct copy of the Activity Card for February 11, 2008 is attached hereto as Exhibit J and incorporated herein by reference.

48. Photographs were taken by Defendant MORAN of Crane's "injuries", which depicted a single scratch across Ms. Crane's right forearm (consistent with Chance scratching Crane with his claw when he jumped up on her, but not biting her) which Crane said she self-treated with soap, water and neosporin.

49. On February 19, 2008 Defendant GILLILAND sent Plaintiff MAAS a letter which he signed as General Manager for Defendant CASA. Despite Crane's statement to Defendant MORAN

Civil Rights Complaint

13

1  that Chance was being playful and was *not* in an "attack mode" when he jumped up on her on

2  February 7, 2007, and the photographs depicting a scratch on Ms. Crane's forearm which was treated

3  with soap, water and neosporin, in his February 19, 2008 letter Defendant GILLILAND stated that

4  Chance engaged in an "unprovoked *attack*" of  Crane on February 7, 2008, causing her to sustain

5  "multiple puncture wounds (approximately 10)." Defendant GILLILAND referenced San Clemente

6  Municipal Code Section 6.28.020 and claimed it authorized the *Animal Services Program Manager*

7  for SAN CLEMENTE to declare a dog "vicious" if the dog  has "engaged in an unprovoked *attack*"

8  on a person or his or her animal.  Defendant GILLILAND then stated that Chance had engaged in an

9  unprovoked *attack* on a person conducting a lawful activity and that, "as the CASA General

10  Manager," he was declaring Chance to be a "vicious animal" pursuant to San Clemente Municipal

11  Code Section 6.28.020.   A true and correct copy of the February 19, 2008 letter is attached hereto

12  as Exhibit K and incorporated herein by reference.

13       50.    Defendant GILLILAND's  February 19, 2008 letter outlined various conditions and

14  restrictions to which Chance would be subjected as a "vicious animal" including that he be kept in

15  a covered yard, that he be kept muzzled and restrained, that he not be walked in public with any other

16  dogs including Plaintiffs' other dogs, that Plaintiff MAAS notify Defendant CASA every time Chance

17  is moved and that Plaintiff MAAS maintain a $1,000,000 insurance policy on Chance naming

18  Defendants CASA and SAN CLEMENTE as additional insureds. Defendant GILLILAND threatened

19  in his letter that Plaintiff's "[f]ailure to comply with any one of these conditions is a *misdemeanor*

20  *criminal offense*" which could result in Chance being "*impounded and ultimately euthanized.*"

21  (Emphasis added)  Plaintiff was advised she had until March 4, 2008 to comply with the conditions

22  set forth in the letter.

23       51.    Defendant GILLILAND ended his February 19, 2008 letter by advising Plaintiff MAAS

24  that she could request a hearing to contest the determination of viciousness or the conditions imposed

25  by submitting  a written request to him "as the General Manager of CASA" along with an

26  administrative hearing fee of $50, payable to CASA, and that as General Manager, he would "set a

27  hearing date within thirty days of receiving the written request and notify [Plaintiff MAAS] by

28  certified mail of the date, time and place of the hearing."

---

Civil Rights Complaint

52.   Although Plaintiffs had requested a copy of the bite report and any documents regarding the alleged incident or the alleged injuries in their February 10, 2008 letter to Defendant CASA and verbally in Plaintiff HENZE's discussions with Defendant MORAN on February 10, 2008, no documents accompanied Defendant GILLILAND's February 19, 2008 letter.

53.   On February 20, 2008 Jeffrey A. Goldfarb, Esq. ("Goldfarb") of Rutan & Tucker, as City Attorney for Defendants SAN CLEMENTE and CASA, sent a letter to Plaintiff HENZE, in response to Plaintiff HENZE's Public Records Act request of February 10, 2008.  In his letter, Goldfarb advised that the February 9, 2008 Notice of Violation "was issued as a warning to your client and does not initiate any formal proceedings."  Goldfarb further advised that Defendants SAN CLEMENTE and CASA were not pursuing any "rabies related action or initiating charges, suit or other prosecution of your client based upon the NOV," and that as a result, Defendants were refusing to provide any of the records requested in Plaintiffs' February 10, 2008 Public Records Act request.  A true and correct copy of the February 20, 2008 letter is attached hereto as Exhibit L and incorporated herein by reference.

54.   Goldfarb also represented in his February 20, 2008 letter that San Clemente Municipal Code Section 6.28.020 "mandates that any dog that has perpetrated even a single incident of biting shall be declared 'vicious'" and informed Plaintiff MAAS that so long as she maintained Chance in accordance with all of the conditions set forth in the "vicious dog" letter, "no formal charges, prosecution or other action will be required."

55.   San Clemente Municipal Code Section 6.28.020A, a true and correct copy of which is attached hereto as Exhibit M and incorporated herein by reference, reads, in pertinent part, as follows:

> "If, after reviewing the applicable facts, the Animal Services Program Manager determines that the animal either engaged in an unprovoked *attack* on either a person conducting a lawful activity or another properly restrained domestic animal or caused a person to reasonably believe that he or she or a properly restrained domestic animal in his or her possession was in imminent danger of great bodily harm, the animal shall be declared to be vicious . . . ." (Emphasis Added)

56.   On February 22, 2008 Plaintiff HENZE went to the offices of Defendant CASA and asked for an application for a private kennel permit.  Plaintiff HENZE was provided with the same

Civil Rights Complaint

—

form Plaintiff MAAS attached to her June 7, 2007 letter to Defendant CASA which requires the applicant to submit to a home inspection, and Plaintiff HENZE was advised by the personnel of Defendant CASA that after the completed form was returned to Defendant CASA, Defendant CASA would have one of the animal control officers go by and inspect his home.  A true and exact copy of the form given to Plaintiff HENZE by the personnel of Defendant CASA on February 22, 2008 is attached hereto as Exhibit N and incorporated herein by reference.

57.     On February 25, 2008 Plaintiff HENZE hand-delivered a letter to Defendant GILLILAND demanding documentation reflecting Defendant GILLILAND's appointment as the Animal Services Program Manager referenced in San Clemente Municipal Code Section 6.28.020. Plaintiff HENZE also requested a hearing before the duly appointed Animal Services Program Manager pursuant to San Clemente Municipal Code Section 6.28.020D and submitted the $50.00 fee payable to CASA.  Plaintiff HENZE noted in his letter that there was no issue concerning Chance's alleged "viciousness" before Plaintiff MAAS refused to agree to a quarantine of her dog without due process of law, and that the February 19, 2008 letter was retaliatory and punitive in reaction to Plaintiff MAAS's assertion of her constitutional rights in the summer of 2007 and again on February 10, 2008.  Plaintiff HENZE remarked that despite Defendant MORAN's representation on February 10, 2008, no documents accompanied the February 19, 2008 "vicious dog" letter and Plaintiff HENZE repeated the Public Records Act request contained in his previous February 10, 2008 letter.  A true and correct copy of the February 25, 2008 letter is attached hereto as Exhibit O and incorporated herein by reference.

58.     On March 7, 2008, Andrew Good with the Sun Post News quoted Defendant Gilliland as making the following statement regarding home inspections for private kennel permits:

> "I personally feel properties should be inspected," Gilliland said.  "We're looking to see that you have enough land for "X" number of animals. *That's not called for at a private kennel at a residence.*"  (Emphasis added)

A true and correct copy of the article published in the Sun Post News on March 7, 2008 is attached hereto as Exhibit P and incorporated herein by reference.

59.     On March 7, 2008 Plaintiffs were provided with certain documents responsive to their

Civil Rights Complaint

1   February 10th and 25th Public Records Act requests including the information contained in the

2   February 11, 2008 Activity Card which revealed that Crane informed Defendant MORAN that she

3   did *not* feel Chance "was in an attack mode, rather a *play* mode" when he jumped up on her while

4   being walked on leash, and the photographs and other documents reflecting a scratch on Crane's right

5   forearm which she self-treated with soap, water and neosporin.

6        60.   On March 13, 2008 Plaintiffs received further documents from Defendants CASA and

7   SAN CLEMENTE including an email from Defendant GILLILAND to Crane on March 3, 2008

8   which reads, in pertinent part:

> "The Dalmatian owner might try and contact you ... were (sic) are in the process of
> scheduling a vicious dog hearing for the dog that bit you. *Again the word vicious is*
> *unfortunate.* . . . The San Clemente Municipal Code *defines* a dog that bites anyone
> in a public place without provocation as "vicious."
> (Emphasis added)

12   A true and correct copy of the March 3, 2008 email from Defendant GILLILAND to Crane is attached

13   hereto as Exhibit Q and incorporated herein by reference.

14        61.   Following the declaration by Defendant GILLILAND that Chance is a "vicious animal."

15   Plaintiffs in a letter dated February 25, 2008, hand-delivered to Defendant GILLILAND at Defendant

16   CASA, requested a hearing regarding the summary declaration, as provided in San Clemente

17   Municipal Code Section 6.28.020D, and paid the $50.00 hearing fee required under the Code, but

18   Defendants, and each of them, failed and refused to provide Plaintiffs with the required hearing, and

19   the time period for providing such a hearing has expired, thereby exhausting Plaintiffs' administrative

20   remedies, and invalidating, in its entirety, said declaration of "viciousness."

21        62.   On April 16, 2008, Plaintiff HENZE received by mail a Notice of Assigned Hearing

22   Dates from the Office of Administrative Hearings identifying "Margaret Maas" as the Case Name,

23   Defendant CASA as the involved "Agency", and setting the matter (which is otherwise undefined)

24   for administrative hearing before the Office of Administrative Hearings on May 29, 2008. No other

25   information regarding the matter accompanied the Notice of Assigned Hearing Dates. No such Notice

26   was received by Plaintiff MAAS, since a Notice was incorrectly addressed to Plaintiff MAAS and

27   contained an inaccurate zip code. A true and correct copy of the Notice of Assigned Hearing Dates

28   and the accompanying envelope directed to Plaintiff HENZE is attached hereto as Exhibit R and

Civil Rights Complaint

1  incorporated herein by reference.

2      63.    On April 22, 2008 Plaintiffs objected in writing to the Notice of Assigned Hearing Date

3  from the Office of Administrative Hearings on jurisdictional and other grounds and demanded that

4  the Office of Administrative Hearings immediately withdraw or retract the Notice of Assigned

5  Hearing Date or otherwise terminate the effectiveness of the Notice, and cease any further

6  involvement in the matter.  A true and correct copy of the April 22, 2008 letter is attached hereto as

7  Exhibit S and incorporated herein by reference.

8      64.    The Office of Administrative Hearings has failed and refused and continues to fail and

9  refuse to withdraw or retract the Notice of Assigned Hearing Date or to otherwise terminate the

10  effectiveness of the Notice, and has further continued to attempt to act as the authorized hearing

11  officer in Plaintiffs' dispute with Defendant CASA regarding Defendant GILLILAND's wrongful

12  declaration of "viciousness."

13      65.    Although the Office of Administrative Hearings has set the matter (as yet undefined)

14  for hearing May 29, 2008, Plaintiffs have not received the Notice of Hearing pursuant to Government

15  Code Section 11509 and have not received a copy of the governing procedure, including a statement

16  whether Chapter 5 (commencing with Section 11500) is applicable to the proceeding, as required by

17  Government Code Section 11425.10. Plaintiffs were not provided with the documentation Defendant

18  CASA submitted to commence the proceeding and have not received an accusation or a statement of

19  issues from Defendant CASA and have thus been deprived of the opportunity to file a notice of

20  defense.   Defendant Office of Administrative Hearings has further advised that although the

21  Administrative Procedure Act does not specifically apply to the matter, "some of its procedural

22  provisions may be relied upon by the Office of Administrative Hearings in conducting the hearing",

23  but Defendant Office of Administrative Hearings has not advised Plaintiffs which provisions of the

24  Administrative Procedure Act may be relied upon by the Office of Administrative Hearings and which

25  of the procedures from San Clemente Municipal Code Section 6.28.020 will apply.

26      66.    Although no ruling has been made on Plaintiffs' April 22, 2008 objections to the Office

27  of Administrative Hearing's involvement and lack of jurisdiction, a pretrial conference has been set

28  for the matter on May 21, 2008, 8 days before the May 29, 2008 hearing and after the various

Civil Rights Complaint

1  deadlines for completion of certain pre-trial proceedings has passed, leaving Plaintiffs unable to

2  prepare for the hearing or to participate in pre-trial proceedings without waiving their objections to

3  jurisdiction which they are unwilling to do.

## FIRST CLAIM FOR RELIEF

**(Damages for Violation of Constitutional Rights Against Defendants GILLILAND, SCHEAR, MORAN, CASA, SAN CLEMENTE and DANA POINT)**

7      67.    Plaintiffs reallege and incorporate by reference thereto each and every allegation

8  contained in Paragraphs 1 through 66, inclusive, of the Complaint, as though set forth in full at this

9  point.

10     68.   At all times herein mentioned, Defendants, and each of them, were acting, or purporting

11  to act, under color of law, that is, under color of the constitution, statutes, laws, rules, regulations,

12  customs, and usages of the State of California and the Municipal Code of San Clemente.

13     69.   At all times herein mentioned, Defendants, and each of them, separately and in concert

14  with each other, engaged in acts and omissions that constituted deprivations of the rights, privileges,

15  and immunities of Plaintiffs, and in violation of the First, Fourth and Fourteenth Amendments to the

16  United States Constitution and  and while these acts were purportedly carried out under color of law,

17  they had no justification or excuse in law, and were instead gratuitous, illegal, improper, criminal, and

18  unrelated to any activity in which law enforcement officers may appropriately and legally engage in

19  in the course of protecting persons and property or ensuring civil order.

20     70.   The acts of Defendants that constitute a deprivation of Plaintiffs' civil rights and are

21  the basis for the claims in this action include denial and infringement of constitutional rights under

22  the First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs are

23  informed and believe and thereon allege that Defendants, and each of them, committed the acts

24  constituting a denial of Plaintiffs' constitutional rights from on or about May 22, 2007 to the present

25  and that Defendants, and each of them, denied and infringed Plaintiffs' constitutional rights as

26  follows:

27          a.      By unlawfully and wrongfully committing an unlawful and unreasonable

28  trespass upon and search of Plaintiffs' private property;

Civil Rights Complaint

1          b.      By unlawfully and wrongfully charging Plaintiff MAAS with violations of the

2 San Clemente Municipal Code that Defendants knew or should have known were false;

3          c.      By unlawfully and wrongfully charging Plaintiff MAAS with vague and

4 unintelligible violations of the San Clemente Municipal Court that Defendants knew or should have

5 known could not be responded to by Plaintiff;

6          d.      By unlawfully and wrongfully charging Plaintiff MAAS with conflicting and

7 inconsistent violations of the San Clemente Municipal Code;

8          e.      By unlawfully and wrongfully making false, deceptive and misleading

9 statements to Plaintiffs as to the nature and scope of the law applicable to animal services and animal

10 control regulations and statutes, and as to Defendants' authority thereunder;

11          f.      By unlawfully and wrongfully stalking and laying in wait for Plaintiffs so as

12 to harass, threatened and intimidate Plaintiffs into giving up their constitutional rights;

13          g.      By unlawfully and wrongfully blocking Plaintiff HENZE from leaving their

14 residence by parking the animal control vehicle on the wrong side of the street in front of Plaintiffs'

15 driveway, blocking access to and from the driveway, with the truck doors open and the engine

16 running, while concurrently yelling out the window at Plaintiff HENZE that he was "just the person

17 she wanted to *catch*," thereby trapping and falsely imprisoning Plaintiff HENZE and prohibiting him

18 from leaving or avoiding Defendants' objectionable, threatening and harassing statements;

19          h.      By unlawfully and wrongfully threatening, intimidating, harassing and

20 extorting Plaintiffs with criminal prosecution and administrative penalties (by advising that

21 Defendants would "make it hard on Plaintiff MAAS," would "make it look bad for Plaintiff MAAS,"

22 would charge Plaintiff MAAS with "all sorts of violations" costing Plaintiffs "thousands of dollars"

23 in fines and fees), and repeatedly threatening the seizure and/or killing of Plaintiffs' animals, in a

24 corrupt effort to obtain money from Plaintiff MAAS (which succeeded) and in an attempt to

25 improperly induce Plaintiffs to give up and/or cease to exercise their constitutional rights including

26 their right to be free from unreasonable searches and seizures and their right not to be deprived of

27 property without due process of law;

28          i.      By knowingly and willfully submitting false information, making false reports,

Civil Rights Complaint

1   improperly exerting pressure and misrepresenting the law and facts to witnesses, and concealing

2   exculpatory evidence regarding the events that led to Defendant GILLILAND, acting as the General

3   Manager of Defendant CASA, to wrongfully declare Chance a "vicious animal" pursuant to San

4   Clemente Municipal Code Section 6.28.020;

5           j.     By conspiring to falsify evidence and suborn perjured testimony;

6           k.     By permitting and encouraging known perjured testimony;

7           l.     By directing, permitting and/or ratifying the conduct of Defendants' counsel

8   in making threats of physical violence against Plaintiff HENZE in a further attempt to harass, threaten

9   and intimidate Plaintiffs;

10           m.     By failing and refusing to provide Plaintiff MAAS with the hearing on the

11   "vicious animal" declaration as set forth in San Clemente Municipal Code Section 6.28.020D, after

12   extorting a $50.00 hearing fee from Plaintiff MAAS, within the time specified in the Code or at all and

13   without revoking or vacating the "vicious animal" determination, in direct violation of the statute. Any

14   violation of the statute constitutes a crime under the San Clemente Municipal Code.

15           n.     By unlawfully and wrongfully violating Plaintiffs' rights of association between

16   themselves and in their relationship with Chance and their other animals, in violation of  the First

17   Amendment.

18       71.    In declaring Chance to be a "vicious animal," Defendant GILLILAND purporting to act

19   as the General Manager of Defendant CASA, attempted to, and purported to, exercise powers reserved

20   for the Animal Services Program Manager for SAN CLEMENTE when, in fact, he is not and has never

21   been properly appointed to be, the Animal Services Program Manager, and Defendant  CASA has no

22   authority to enforce any provisions of the San Clemente Municipal Code.

23       72.    Plaintiffs are informed and believe, and thereon allege that Defendant GILLILAND's

24   declaration that Chance is a "vicious animal" has no basis in fact but was made by said Defendant in

25   retaliation and punishment for Plaintiffs' prior assertion of their constitutional rights.

26   .    73.    The act of Defendant GILLILAND in declaring Chance to be a "vicious animal" was

27   made summarily, without a hearing at any stage, despite Plaintiffs' demand for a hearing, thus

28   depriving Plaintiffs of due process in violation of the Fourteenth Amendment to the United States

Civil Rights Complaint

1  Constitution and 42 U.S.C. §1983.

2      74.    Plaintiffs are informed and believe and on such information and belief allege that

3  Defendant GILLILAND had personal involvement in his supervisorial capacity in the constitutional

4  deprivations described in paragraphs 70 through 73 above, failed to remedy the wrong after learning

5  of it, created or maintained a policy or custom under which the unconstitutional practices occurred,

6  committed intentional misconduct and/or gross negligence in supervising the animal control officers

7  and/or exhibited deliberate indifference to the above-described constitutional deprivations by failing

8  to act on information indicating violations were occurring.

9      75.    Defendants CASA, SAN CLEMENTE and DANA POINT failed to supervise or properly

10  train Defendants GILLILAND, SCHEAR and MORAN, and through their lack of supervision and

11  training permitted these individuals to commit some or all of the acts complained of herein.

12      76.    Defendant CASA is an agency of SAN CLEMENTE and DANA POINT and functions

13  under the umbrella of the government of SAN CLEMENTE and DANA POINT.  Therefore, the acts

14  and policies of CASA are, in effect, the acts and policies of the SAN CLEMENTE and DANA POINT.

15      77.    The wrongful and abusive tactics and practices to which Plaintiffs were subjected and

16  the acts of Defendants in violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth

17  Amendments of the United States Constitution were consistent with an institutionalized practice of

18  Defendant CASA which was known to and ratified by Defendants SAN CLEMENTE and DANA

19  POINT, and each of them.

20      78.    Despite knowledge of these institutionalized practices, Defendants SAN CLEMENTE

21  and DANA POINT, and each of them, have at no time taken any effective action to prevent Defendant

22  CASA or its personnel, including Defendants GILLILAND, SCHEAR and MORAN, from continuing

23  to engage in this type of misconduct.

24      79.    Defendants SAN CLEMENTE and DANA POINT, and each of them, had prior notice

25  of the abusive and unlawful practices of Defendants GILLILAND, SCHEAR and MORAN, but took

26  no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

27      80.    Defendants SAN CLEMENTE and DANA POINT, and each of them, authorized,

28  tolerated as institutionalized practices, and ratified the misconduct detailed above by:

Civil Rights Complaint